## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CIVIL ACTION NO. 1:24cv24802

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>      **Plaintiff,**<br><br> **v.**<br><br>**STEVE A. SMITH, JR. AND XTREME FIGHTING CHAMPIONSHIPS, INC.**<br><br>      **Defendants.** | **COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges the following against defendants Steve A. Smith, Jr. ("Smith") and Xtreme Fighting Championships, Inc. ("Xtreme Fighting") (together, "Defendants"):

### SUMMARY

1.  From approximately January 2020 through at least April 2022, Smith and Xtreme Fighting engaged in a fraudulent scheme to illegally sell large amounts of Xtreme Fighting stock to the investing public. In January 2020, Smith acquired control of Xtreme Fighting and became its chief executive officer. Xtreme Fighting was a small company with stock traded in the over-the-counter securities market. Smith immediately began a fraudulent scheme to sell Xtreme Fighting's stock. The stock sales were illegal because Smith and Xtreme Fighting's in-house counsel, who has since died, controlled the stock and sold it in transactions that were neither registered with the Commission nor exempt from registration. Smith and the in-house counsel

hid their control of the stock to avoid legal limits on sales by insiders.  The scheme generated over $5 million in illegal proceeds, of which Xtreme Fighting received at least $436,000.

2.     To further the scheme, in April 2022, Smith and Xtreme Fighting publicly filed an annual report on Commission Form 10-K falsely stating that Xtreme Fighting's financial statements were audited by an independent registered public accounting firm.  Public companies that file annual reports with the Commission on Form 10-K are required to include audited financial statements.  Smith made the false filing because Xtreme Fighting's annual report had been delinquent.  This delinquency had caused Xtreme Fighting's stock to move to a more restricted portion of the over-the-counter securities market, designated for companies that do not make current information publicly available.  Despite warnings from Xtreme Fighting's auditing firm that the audited financial statements were not complete or close to being complete, Smith proceeded with filing the Form 10-K with the purpose and effect of removing Xtreme Fighting stock from the more restrictive area of the market.

## VIOLATIONS

3.     By virtue of the conduct alleged herein, Smith and Xtreme Fighting violated Sections 5(a), 5(c), 17(a)(1), and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)(1), and 77q(a)(3)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. §§ 240.10b-5(a)-(c)].  Xtreme Fighting further violated Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)] and Smith aided and abetted that violation.

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

4.     The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d)(1) of the Exchange

Act [15 U.S.C. § 78u(d)(1)].

5.     The Commission seeks: (i) against Defendants, permanent injunctions, enjoining them from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, including enjoining them from committing or engaging in specified actions or activities relevant to violations charged herein; (ii) against Defendants, disgorgement of all ill-gotten gains from the unlawful conduct set forth in this Complaint, together with prejudgment interest, under Sections 21(d)(5) and (7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5) and (7)]; (iii) against Defendants, civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; (iv) against Smith, an order barring him from participating in any offering of a penny stock, pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and/or Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)]; (v) against Smith, an order enjoining him from directly or indirectly participating in the issuance, purchase, offer or sale of any security, provided that such injunction shall not prevent him from purchasing or selling securities listed on a national exchange for his own personal accounts; (vi) against Smith, an order barring him from acting as an officer or director of any public company, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and (vii) such other relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to Sections 20(d)(1) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d)(1) and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78aa]. Venue lies in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15

U.S.C. § 78aa]. Smith is a resident of this district, and Xtreme Fighting has maintained its principal place of business in this district.

7. In connection with the transactions, acts, practices, and courses of business alleged in this Complaint, Defendants, directly or indirectly, singly or in concert, made use of the means or instrumentalities of transportation or communication in interstate commerce, or the mails.

## **DEFENDANTS**

8. **Smith**, age 50, is a resident of Miami, Florida. In a public filing made with the Commission on or about January 24, 2020, Xtreme Fighting—then known as Duke Mountain Resources, Inc. (**"Duke Mountain"**)—announced Smith's election to its board of directors and appointment as its president and CEO. Thereafter, Smith signed annual, quarterly, and other periodic reports that Xtreme Fighting filed with the Commission.

9. **Xtreme Fighting** is a Nevada corporation headquartered in Miramar Beach, Florida. During the period relevant to this Complaint, Xtreme Fighting's common stock was quoted on OTC Link operated by OTC Markets Group, Inc. ("OTC Markets") under the ticker symbol "XFCI." Xtreme Fighting was known as Duke Mountain until July 2020, and was previously quoted on OTC Link with the symbol "DKMR." Xtreme Fighting describes itself as a sports entertainment and media company that produces, promotes, and broadcasts mixed martial arts fighting events. During the period relevant to this complaint, Xtreme Fighting filed periodic reports with the Commission, including annual reports on Form 10-K, quarterly reports on Form 10-Q, and other interim reports on Form 8-K. Those reports were available to the investing public via the Commission's public website.

## RELEVANT INDIVIDUALS AND ENTITIES

10.     **Christopher K. Davies ("Davies")** was a close friend of Smith.  Davies died in September 2022.  Davies was licensed as an attorney in Illinois until his suspension in 2015.  In April 2018, the Commission filed a civil action alleging securities fraud against Davies in the United States District Court for the Eastern District of New York.  *SEC v. Christopher K. Davies, et al.*, No. 18-cv-2323 (E.D.N.Y., filed April 18, 2018).  The Commission alleged that Davies fraudulently controlled a penny stock company from behind the scenes and made false statements about its business plans and operations so he could illegally obtain millions of shares, which he planned to profit on by selling into the securities markets.  The court entered a default judgment against Davies on February 23, 2022.  In a criminal action involving related conduct, Davies was indicted in the Eastern District of New York on August 30, 2018.  *U.S. v. Davies,* No. 18-cr-479 (E.D.N.Y.).  Davies pleaded guilty on May 28, 2019 to one count of conspiracy to commit securities fraud, in violation of 17 U.S.C. § 78j(b).  On March 2, 2022, the Commission issued an order suspending Davies from appearing or practicing before the Commission.  Davies therefore could not legally prepare Commission filings such as Xtreme Fighting's annual reports on Form 10-K.  Davies, however, acted as "counsel" for Xtreme Fighting, by using a pseudonym, "Jim Barnes."  Xtreme Fighting identified "Barnes" as company counsel in a public filing signed by Smith.  Smith knew that Davies used the "Barnes" pseudonym.

11.     **Emerald Coast Investments, Inc. ("Emerald Coast")** was a Florida corporation with a mailing address at Smith's residence.  Emerald Coast's corporate filings listed Smith as an officer and director, and an Xtreme Fighting public filing described Smith as "principal" of Emerald Coast.  Smith and Davies used Emerald Coast as a front company or nominee to illegally sell shares of Duke Mountain and Xtreme Fighting stock.

12.     **Eastern Dutch Enterprises, Ltd. ("Eastern Dutch")** was a corporation purportedly incorporated in St. Kitts and Nevis.  Davies and Smith used Eastern Dutch as a front company or nominee to sell shares of Xtreme Fighting in the public market.  A person with whom Davies had a close personal relationship ("**Individual A**"), was the purported CEO of Eastern Dutch.  In reality, Davies controlled Eastern Dutch and directed Individual A's activities, including trading in brokerage accounts and wiring trading proceeds to bank accounts that Davies controlled.

13.     **Marlin Media, Inc. ("Marlin Media")** was a corporation purportedly incorporated in St. Kitts and Nevis.  Davies and Smith used Marlin Media as a front company or nominee to sell shares of Xtreme Fighting in the public market.  Another person with whom Davies had a close personal relationship ("**Individual B**") was the purported CEO of Marlin Media.  Davies controlled Marlin Media and directed Individual B's activities, including trading and wiring trading proceeds.

14.     **Valor Capital** was incorporated in the Cayman Islands in 2017.  Valor Capital registered as a broker-dealer with the Cayman Islands Monetary Authority by no later than January 2020.

15.     **Joseph A. Padilla** is an individual charged by the Commission in June 2023, alleging that he illegally sold stock of several microcap companies, including Xtreme Fighting. *SEC v. Padilla*, 23-cv-11331-RGS (D. Mass. filed June 13, 2023).  The Commission's complaint included allegations that Padilla engaged in a fraudulent scheme for individuals who paid Padilla to arrange illegal stock sales.  The complaint alleged that those individuals hid their identities through offshore accounts at Valor Capital in different names that Padilla arranged, which the complaint described as "Padilla Nominees."  The Commission and Padilla reached a settlement,

and the court entered a consent judgment on November 8, 2024.  The U.S. Attorney's Office for the District of Massachusetts indicted Padilla on March 21, 2023 for conduct partially related to the Commission's action.  Padilla pled guilty on August 3, 2023 to securities fraud for conduct relating to two companies, not Xtreme Fighting.  *U.S. v. Padilla, 23-cr-10075-RGS,* ECF No. 136 (D. Mass.).  As part of an agreed-upon statement of facts, Padilla admitted that Valor Capital was a Cayman Islands broker with which he had "a close, unofficial association."

## **BACKGROUND**

16.    Xtreme Fighting stock was traded at all relevant times in the over-the-counter penny stock market.  A "penny stock" generally refers to stock of companies with low market capitalizations and stock that trades at less than $5 per share.  As described below, Smith illegally sold "restricted stock" that was restricted because it was originally issued by Xtreme Fighting (or its predecessor, Duke Mountain) in a private transaction that was not registered with the Commission.  The stock certificates for restricted shares include a legend indicating that they are restricted, and that legend must be removed by the stock issuer's transfer agent before the stock can be legally resold to the public.  Smith's scheme involved having Xtreme Fighting's transfer agent remove restrictive legends from stock shares on false pretenses.

17.    Absent an exemption under the federal securities laws and rules, restricted stock cannot legally be offered or sold to the public unless a securities registration statement has been filed with the Commission (for an offer) or is in effect (for a sale).  Such registration statements are often filed with the Commission on Form S-1 and are often referred to as "S-1 registration statements."  S-1 registration statements contain important information about an issuer's business operations, financial condition, results of operation, risk factors, and management.  They also

disclose any person or group who is the beneficial owner of more than 5% of the company's securities.

18.     An "affiliate" of an issuer is a person or entity, like Smith and Davies, who directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such issuer (*i.e.*, a control person).  "Control" means the power to direct the management and policies of the company in question.  Affiliates include officers, directors, and controlling shareholders, as well as any person who is under "common control" with, or has common control of, an issuer.

19.     Smith and Xtreme Fighting's scheme involved a fraudulent effort to use a safe harbor provided by Rule 144 under the Securities Act [17 C.F.R. § 240.144] for holders of restricted stock to sell shares to the public in unregistered transactions.  Rule 144 requires the holder of restricted stock to hold the shares for a minimum period of time before reselling them. It also includes a volume limitation on resales by affiliates, like Smith or Davies, which limits them to selling only small amounts of stock at any one time in unregistered transactions.  Smith engaged in fraudulent conduct to make it appear that Emerald Coast had held Duke Mountain/Xtreme Fighting shares for the requisite holding period.  Further, Smith sold shares of Duke Mountain/Xtreme Fighting, through Emerald Coast, in an amount that exceeded the volume limitation.  Smith also facilitated illegal sales by Davies in excess of the volume limitation.

20.     A "transfer agent" is a company which, among other things, issues and cancels certificates of a company's stock to reflect changes in ownership.  Many companies that have publicly traded securities use transfer agents to keep track of the individuals and entities that own their stock.  Transfer agents routinely keep track of whether shares are restricted from resale.

Before removing restrictive legends from stock, transfer agents often require an opinion letter from an attorney representing that shares are eligible for public resale pursuant to an exemption from registration.

21.     OTC Markets is a stock quotation service that facilitates over-the-counter trading of shares in small companies that are not listed on national securities exchanges (like NASDAQ or the New York Stock Exchange).  OTC Markets operates OTC Link (previously known as "Pink Sheets") to provide price quotes on stock traded in the over-the-counter market.  Xtreme Fighting's stock was quoted on OTC Link with the symbol "XFCI" or "DKMR" as it was previously known.

22.     From January 2020 through January 2022, Smith caused or recklessly allowed Xtreme Fighting to issue millions of shares of stock for the purpose of public distribution, in transactions that were not registered with the Commission.  The stock should have been restricted and ineligible for public resale unless there was a valid exemption to registration, which there was not.  Smith and Davies, however, arranged for Xtreme Fighting to issue the stock to Emerald Coast, Eastern Dutch, and Marlin Media—entities purportedly unaffiliated with Xtreme Fighting but, in reality, controlled by Smith and/or Davies.  The issuance of stock to purportedly unaffiliated entities created a false appearance that the stock was exempt from registration and eligible for public resale.

23.     The illegal sales of stock arranged by Smith and Davies took place while Xtreme Fighting was actively promoting its brand through a series of press releases.  The press releases included announcements of upcoming mixed martial arts fights and deals to broadcast fights on well-known television networks.  During the period of the scheme, Xtreme Fighting issued dozens of press releases.

## SMITH'S ACQUISITION OF
## <u>XTREME FIGHTING AND ILLEGAL SALES OF ITS STOCK</u>

24.    As of November 2019, Xtreme Fighting's predecessor company, Duke Mountain, described itself as a mineral exploration company that in 2014 had ceased operations and was "currently a non-operating shell company." Duke Mountain described its business purpose, as of its annual report for 2019, to be "to serve as a vehicle to effect a merger, exchange of capital stock, asset acquisition, or other business combination."

25.    On or about January 24, 2020, Duke Mountain publicly reported the resignation of the individual who had served as Chief Executive Officer, Chief Financial Officer, and Director of the company. Duke Mountain announced Smith's election as a member of its board of directors and his appointment as President and CEO. Duke Mountain also announced that its majority shareholder had sold a controlling interest in the company to Smith.

26.    In a quarterly report for the quarter ended March 31, 2020, filed with the Commission on May 21, 2020, Duke Mountain announced that on January 30, 2020, it had entered into a Securities Purchase Agreement to acquire 800,000,000 shares of Xtreme Fighting. In a quarterly report for the quarter ended June 30, 2020, filed with the Commission on August 26, 2020, Duke Mountain announced that it had acquired the rights to "Xtreme Fighting Championships, Inc., the largest independent mixed martial arts organization in the world" and changed its name to Xtreme Fighting Championships, Inc.

27.    On or about January 14, 2020, Duke Mountain issued 20 million shares of stock to Emerald Coast. Ten days later, on or about the same day that Duke Mountain announced Smith's takeover, Emerald Coast sold or purported to sell, for unspecified "value received," 15 million of its 20 million shares to Valor Capital in the Cayman Islands. Smith acted on behalf of Emerald Coast for its transfer of the 15 million shares to Valor Capital. The shares should

have remained restricted and unavailable for public resale because they were controlled by Smith, who, by the time of the transfer, was an affiliate of Duke Mountain.  Emerald Coast's transfer of 15 million shares to Valor Capital, at Smith's direction, was part of an illegal distribution of stock to the public.

28.     Emerald Coast transferred the 15 million Duke Mountain shares to Valor Capital after Duke Mountain's transfer agent removed restrictive legends from the stock.  The transfer agent removed the legends after receiving fraudulent information.  The transfer agent records included a December 18, 2019 letter to the transfer agent from an attorney purportedly representing Emerald Coast, opining that the 20 million shares could be sold without restriction.  The December 18, 2019 letter was fabricated.  It was not authored by the attorney whose letterhead and signature appeared upon it, and the letterhead included a phone number unrelated to the attorney.  Davies likely authored the fabricated opinion letter, and Smith knew or was reckless in not knowing that Davies prepared such a letter—in September 2021 Davies copied Smith on an email exchange involving Davies's preparation of an opinion letter relating to a different company's stock, but on the same attorney's letterhead.

29.     According to the fabricated December 18, 2019 attorney opinion letter, Duke Mountain issued the 20 million shares to Emerald Coast to reduce the outstanding balance on convertible debt issued in 2012 to Emerald Coast by a subsidiary of Duke Mountain.  The letter attached a December 10, 2019 "Share Purchase Agreement and Assignment and Assumption of Debt," according to which Duke Mountain purportedly acquired the subsidiary and assumed its debt to Emerald Coast.  Smith signed the agreement as president of Duke Mountain, even though he purportedly did not become a Duke Mountain officer until more than a month later.  "Jim Barnes," which Smith knew to be a pseudonym for Davies, signed for Emerald Coast.  Emerald

Coast's purported acquisition of Duke Mountain stock through the conversion of debt dating to 2012 created a false appearance that Emerald Coast had acquired stock that was eligible for resale in the public markets.

30.     After Emerald Coast transferred 15 million Duke Mountain shares to Valor Capital, Valor Capital deposited the shares in an account of a Padilla Nominee.  The Padilla Nominee account immediately sold some of the shares in the public market and transferred other shares to other customer accounts.  Between January 2020 and September 2020, various accounts at Valor Capital sold 9 million of the 15 million shares in the public markets.

31.     The timing of the deposit and sales at Valor Capital corresponded to press releases issued by Duke Mountain.  On February 4, 2020, Duke Mountain issued a press release titled "XFC IS BACK."  Duke Mountain announced its "latest investment into the sports entertainment market of mixed martial arts as the lead investor of Xtreme Fighting Championships, Inc."  The release quoted Smith as saying "I am excited to announce that we are bringing the XFC back this year! . . . .  [W]e have made many strategic changes that have created a new vision and stability for XFC that will enable the organization to rise to the pinnacle of combat sports."  On February 25, 2020, Duke Mountain issued another press release, again with quotes from Smith, and announced that Xtreme Fighting had secured broadcast contracts to televise its events.  An account at Valor Capital sold 20,000 shares on February 7, 2020 and another 20,000 shares on February 21, 2020, relative to overall market trading volume for Duke Mountain shares of 55,988 and 36,700 shares on those respective dates.

32.     In 2021, Smith and Xtreme Fighting attempted to paper over the illegal sale of 15 million shares via Valor Capital.  In a description of related party transactions in Xtreme Fighting's annual report for fiscal year 2020, publicly filed with the Commission on or about

September 20, 2021 and signed by Smith, Xtreme Fighting described Duke Mountain's purported assumption of Emerald Coast debt in January 2020.  The annual report now described Smith as "principal" of Emerald Coast and claimed that Emerald Coast had forgiven the debt that Duke Mountain owed to it.  The annual report also stated that during 2020 Emerald Coast had been issued 27,000,000 shares "for services."  In fact, the only shares issued to Emerald Coast in 2020 were the 20 million shares issued in January 2020 and another 7 million issued in October 2020.  The statements in the annual report were false because Xtreme Fighting (then Duke Mountain) had issued the 20 million shares in purported conversion of existing debt, not "for services" rendered, and Emerald Coast had not forgiven the debt.  It had instead purportedly converted the debt as a basis to sell 15 million shares of resulting stock to the public via Valor Capital.

## PROCEEDS TO XTREME FIGHTING FROM ILLEGAL STOCK SALES

33.     Smith and Davies later arranged for Xtreme Fighting to issue shares to Eastern Dutch and Marlin Media, which were entities that Davies secretly controlled.  Davies arranged for Individual A and Individual B to act as nominal president or CEO of Eastern Dutch and Marlin Media.  Eastern Dutch and Marlin Media deposited and sold over 32 million shares of Xtreme Fighting stock between September 2020 and February 2022, and received over $5.4 million in illegal proceeds.  Davies controlled and directed Individual A's and Individual B's activities, including trading Xtreme Fighting stock and transferring proceeds from the stock sales to Davies and Xtreme Fighting.

34.     In October 2020, Xtreme Fighting issued 7 million shares each to Emerald Coast and Eastern Dutch.  Smith, in his capacity as CEO of Xtreme Fighting, signed a letter to Xtreme Fighting's transfer agent on Xtreme Fighting letterhead falsely stating that neither Emerald Coast

nor Eastern Dutch was an affiliate of Xtreme Fighting.  Smith's letter further represented that the shares were "free-trading," *i.e.*, unrestricted and available for resale in the public securities markets.  The shares, however, should have remained restricted because they were controlled by Smith and Davies.  Smith's letter also falsely stated that "[t]here is no agreement or any other arrangement" between or among Xtreme Fighting, Emerald Coast, and/or Eastern Dutch "to remit any portion of the proceeds from the resale of the Shares" to Xtreme Fighting.

35.     In January 2021, Emerald Coast transferred another approximately 7 million shares to Eastern Dutch.  Xtreme Fighting's transfer agent issued the stock to Eastern Dutch without a restrictive legend after receiving another letter on Xtreme Fighting letterhead, again signed by Smith in his capacity as CEO of Xtreme Fighting, falsely representing that the shares were "free-trading."  The shares, however, should have remained restricted because they were controlled by Smith and Davies.

36.     Eastern Dutch, acting at Davies's direction, deposited 7 million shares on or about October 27, 2020 and 7 million shares on or about January 14, 2021 at another Cayman Islands broker-dealer (the "Second Cayman Broker-Dealer").  For the deposits, Eastern Dutch provided the Second Cayman Broker-Dealer with a letter to Xtreme Fighting's transfer agent on Xtreme Fighting letterhead, signed by Smith in his capacity as CEO of Xtreme Fighting.  The letter falsely stated that neither Emerald Coast nor Eastern Dutch was an affiliate of Xtreme Fighting. The letter also falsely stated that "[t]here is no agreement or any other arrangement between [Xtreme Fighting] and [Emerald Coast] or the other nonaffiliated parties to remit any portion of the proceeds from the resale of the Shares to [Xtreme Fighting]."

37.     Immediately after depositing the shares in October 2020 and January 2021, Eastern Dutch, acting at Davies's direction, began selling them via the Second Cayman Broker-

Dealer in the public securities markets.  Between October 27, 2020 and January 22, 2021, Eastern Dutch sold over 12.7 million shares of Xtreme Fighting stock, for proceeds of over $1.7 million.  On or about January 22, 2021, Eastern Dutch, again acting at Davies's direction, sent $336,000 of the stock sale proceeds to Xtreme Fighting.

38.     In March 2021, Xtreme Fighting issued 10 million purportedly "free-trading" shares of Xtreme Fighting stock to Marlin Media.  The transfer agent issued the stock to Marlin Media without restrictive legend after receiving a letter on Xtreme Fighting letterhead, signed by Smith in his capacity as CEO of Xtreme Fighting, dated February 2, 2021.  According to the letter, Marlin Media purportedly acquired the 10 million shares from Emerald Coast.  The letter falsely represented that neither Emerald Coast nor Marlin Media was an affiliate of Xtreme Fighting.  The shares should have been restricted because they were controlled by Smith and Davies.  Smith's letter falsely represented that "[t]here is no agreement or any other arrangement between [Xtreme Fighting], [Emerald Coast] or Marlin Media, Inc. and there has never been any agreement or arrangement to remit any portion of the proceeds from the resale of the Shares to [Xtreme Fighting]."

39.     Marlin Media, acting at Davies's direction, deposited the 10 million shares on or about April 6, 2021 at the Second Cayman Broker-Dealer and, in connection with the deposit, provided the broker-dealer with a copy of Smith's February 2, 2021 letter.

40.     Immediately after depositing the shares, Marlin Media, acting at Davies's direction, began selling them in the public securities markets.  Between April 7, 2021 and May 10, 2021, Marlin Media sold over 5.4 million shares of Xtreme Fighting stock for proceeds of over $536,000.  On or about May 10, 2021, Marlin Media, acting at Davies's direction, sent $100,000 of the sales proceeds to Xtreme Fighting.

## ILLEGAL SALES VIA A PADILLA NOMINEE AND
## SMITH'S FILING OF A FRAUDULENT ANNUAL REPORT

41.     On January 12, 2022, Xtreme Fighting issued 10 million shares each to four entities secretly controlled by Davies, including Marlin Media.  The transfer agent issued the stock after receiving a letter on Xtreme Fighting letterhead, signed by Smith, representing that the stock derived from a conversion of debt owed to Emerald Coast.  Smith's letter falsely represented that Emerald Coast, Marlin Media, and the other entities controlled by Davies were not affiliates of Xtreme Fighting.  Smith again represented falsely that the shares were "free trading."  In March 2022, Marlin Media, sold, or purported to sell, its 10 million shares to Smith Corona S.A. de C.V. ("Smith Corona"), which was a Padilla client or a Padilla Nominee with an account at Valor Capital.

42.     Smith and Davies orchestrated the delivery of Xtreme Fighting shares to Smith Corona but took steps to distance themselves from the transaction.  They delivered the shares to Smith Corona to share in Smith Corona's trading proceeds and/or to maintain an active market in Xtreme Fighting stock.  On Friday, March 4, 2022, Smith emailed Xtreme Fighting's transfer agent to say that he approved of the transfer from Marlin Media to Smith Corona.  After the transfer agent responded to Smith with a list of required documentation, Smith forwarded the email to Davies and Individual B, writing "[w]e need to get this sorted out today/Monday so we can get these shares moved."

43.     On Monday, March 7, 2022, Smith received an email from someone acting on behalf of Smith Corona, instructing Smith on the documentation that would be necessary for the transfer agent to transfer shares from Marlin Media to Smith Corona.  The sender of the email wrote to Smith that if Marlin Media did not have an email address, they could use a Smith Corona address to contact the transfer agent.  Smith forwarded the message to a "Jim Barnes"

16

email address for Davies, who sent it to Individual B with instructions to complete the paperwork and send it to Xtreme Fighting's transfer agent.  Davies wrote to Individual B, "Please BCC Steve and Me. Must copy us under BCC so no one sees us."

44.     Also on March 7, 2022, Smith wrote to Davies, "Need the name and address of the broker for Smith Corona.  Send it to [Individual B] so she can complete the Stock Power." The "Stock Power" was a reference to a transfer agent form, ultimately signed by Individual B, authorizing the transfer of shares from Marlin Media to Smith Corona.

45.     The transfer agent ultimately moved the 10 million shares from Marlin Media to Smith Corona on March 11, 2022, after receiving documentation signed by Individual B.

46.     On April 19, 2022, OTC Markets recategorized Xtreme Fighting's stock to a more restrictive trading level after Xtreme Fighting failed to file a timely annual report.  Xtreme Fighting was delinquent in filing its annual report on Commission Form 10-K because its 2021 financial statements had not been audited by an independent registered public accounting firm. Public companies that file annual reports with the Commission on Form 10-K are required to include audited financial statements.

47.     OTC Markets uses market designations and informational "flags" associated with risks of particular securities.  The "Pink Current" designation is applied to issuers that are current with reporting obligations.  The "Pink Limited Information" designation is applied to issuers that are delinquent in reporting obligations, and OTC Markets applies a "yield" sign icon next to such securities on its website.  On April 19, 2022, OTC Markets changed Xtreme Fighting's designation to Expert Market, which is a more restrictive tier of the over-the-counter market for stock of companies that do not make current information publicly available.

48.     On or about April 13, 2022, Smith emailed Xtreme Fighting's audit firm regarding the filing of Xtreme Fighting's annual report on Commission Form 10-K and said, "[o]bviously we need this filed by the Friday deadline."  Smith copied Davies, acting as "Jim Barnes," who represented himself to the auditor as Xtreme Fighting's counsel.  Davies, acting as "Barnes," replied to Smith's email and said to the auditor, "[W]e need to file before a yield sign is placed on our stock symbol. Which could happen if we do not file our 10K on Monday or Tuesday."

49.     On or about April 13, 2022, a representative from the audit firm emailed Smith a list of items required for the audit, such as financial information and supporting documentation. The representative wrote, "I need documentation. . . . We also need to do confirmations and the like.  Confirmations take weeks to get back at best. . . . Staff has to be able to get through all of this before you can file."

50.     Ignoring the auditor, Smith signed and caused to be filed Xtreme Fighting's 2021 Form 10-K on or about April 21, 2022, two days after Xtreme Fighting was moved to the Expert Market because of its delinquent filing.  The Form 10-K stated that Xtreme Fighting had appointed the new auditor to perform audit services for fiscal year 2021, purported to include "audited" financial statements for the 2020 and 2021 fiscal years, and referred to "[t]he report of our independent registered public accounting firms that accompanies our audited consolidated financial statements for the year ended December 31, 2021."  These statements were false because the new auditor had not completed an audit of Xtreme Fighting's financial statements for 2021.

51.     Smith publicly posted on social media about the Form 10-K on April 20, 2022, writing, "XFCI is filing its audited 10k now with the SEC, it should appear tomorrow."  In a

second post that day, he said, "Now that the heavy lifting of SEC audited financials is handled, we can again focus on the fight business of XFC." These statements were false because Xtreme Fighting's financials had not been audited.

52.     After Smith and Xtreme Fighting filed the Form 10-K, OTC Markets upgraded its designation of Xtreme Fighting to Pink Current on April 22, 2022, thus removing the market restriction that Smith and Davies had wanted to avoid.

53.     The day after the filing, Xtreme Fighting's auditor resigned. In a letter to Smith, the auditor made clear that it had not even started the 2021 audit. The auditor told Smith that it had "specifically responded to you that you did not have our permission or authorization to file the 10K but you filed this disregarding our expressly not granting permission to file."

54.     The letter from the auditor to Smith also stated that the auditor had learned that "Jim Barnes" was Davies using a false name, and expressed concern that Xtreme Fighting's counsel "in actuality is a person that has been suspended from involvement in public reporting entities by the SEC." Smith, however, persisted with the "Barnes" ruse after Davies died in September 2022. Smith signed a current report on Form 8-K, filed with the Commission in April 2023, announcing the departure and appointments of certain officers and noting that "Jim Barnes" had died.

55.     On or about April 27, 2022, Valor Capital deposited into the account of Bangatron SA de CV, another Padilla client or Padilla Nominee, the 10 million shares that Marlin Media had transferred to Smith Corona, and the account began selling the shares in the public securities markets on May 6, 2022.

56.     On May 10, 2022, Xtreme Fighting filed an amended 2021 Form 10-K that it said was "soley [sic] for the purpose of (i) reflecting that our financial statements are unaudited and

(ii) correct [sic] some typo mistakes."  In the amended version, financial statements that in the original version were marked as "audited" were changed to "unaudited."

### FIRST CLAIM FOR RELIEF
<u>FRAUD IN THE OFFER OR SALE OF SECURITIES</u>

**Violations of Sections 17(a)(1) and (3) of the Securities Act**
**(Smith and Xtreme Fighting)**

57.     Paragraphs 1 through 56 above are re-alleged and incorporated by reference as if fully set forth herein.

58.     By reason of the conduct described above, the Defendants, directly or indirectly, in connection with the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, acting intentionally, knowingly, recklessly, or negligently (i) employed devices, schemes, or artifices to defraud; and (ii) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

59.     By reason of the conduct described above, the Defendants violated Securities Act Sections 17(a)(1) and (3) [15 U.S.C. §§ 77q(a)(1) and (3)] and will continue to violate those sections unless enjoined.

### SECOND CLAIM FOR RELIEF
<u>FRAUD IN THE OFFER OR SALE OF SECURITIES</u>

**Violations of Section 17(a)(2) of the Securities Act**
**(Xtreme Fighting)**

60.     Paragraphs 1 through 56 above are re-alleged and incorporated by reference as if fully set forth herein.

61.     By reason of the conduct described above, Xtreme Fighting, directly or indirectly, in connection with the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, acting intentionally, knowingly,

recklessly, or negligently obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading.

62.     By reason of the conduct described above, Xtreme Fighting violated Securities Act Section 17(a)(2) [15 U.S.C. § 77q(a)(2)] and will continue to violate that section unless enjoined.

### THIRD CLAIM FOR RELIEF
### FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES

**Violations of Section 10(b) of the Exchange Act and Rules 10b-5(a), (b), and (c) thereunder
(Smith and Xtreme Fighting)**

63.     Paragraphs 1 through 56 above are re-alleged and incorporated by reference as if fully set forth herein.

64.     By reason of the conduct described above, the Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, intentionally, knowingly or recklessly, (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

65.     By reason of the conduct described above, the Defendants violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c) [17 C.F.R. §§ 240.10b-5(a), (b), and (c)] thereunder and will continue to violate that section and those rules unless enjoined.

### FOURTH CLAIM FOR RELIEF
### <u>UNREGISTERED OFFERINGS OF SECURITIES</u>

**Violations of Sections 5(a) and 5(c) of the Securities Act**
**(Smith and Xtreme Fighting)**

66.     Paragraphs 1 through 56 above are re-alleged and incorporated by reference as if fully set forth herein.

67.     By reason of the conduct described above, Defendants, directly or indirectly: (i) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement has been in effect and for which no exemption from registration has been available; and/or (ii) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement has been filed.

68.     As a result, Defendants violated Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)] and will continue to violate those sections unless enjoined.

### FIFTH CLAIM FOR RELIEF
### <u>AIDING AND ABETTING</u>

**Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)]**
**(Smith)**

69.     Paragraphs 1 through 56 above are re-alleged and incorporated by reference as if fully set forth herein.

70.     By reason of the conduct described above, Smith knowingly or recklessly provided substantial assistance to Xtreme Fighting in its violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].  Smith therefore violated Section 17(a)(2) and will continue to violate that section unless enjoined.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court find that the Defendants committed the violations alleged, and:

### **I.**

Enter a Final Judgment permanently restraining and enjoining Defendants, as well as their agents, servants, employees, attorneys, and other persons in active concert or participation with them, from directly or indirectly engaging in the conduct described above, or in conduct of similar purpose and effect, in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)], and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5];

### **II.**

Enter a Final Judgment permanently enjoining Defendants from violating, directly or indirectly, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§77e(a) and (c)];

### **III.**

Enter a Final Judgment ordering Defendants to disgorge their ill-gotten gains and pay prejudgment interest thereon pursuant to Sections 21(d)(5) and (7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5) and (7)];

### **IV.**

Enter a Final Judgment imposing civil money penalties upon Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)];

**V.**

Enter a Final Judgment prohibiting Smith from participating in any offering of a penny stock, pursuant to Section 20(g) of the Securities Act [15 U.S.C. §77t(g)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. §78u(d)(6)];

**VI.**

Enter a Final Judgment barring Smith, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from serving as an officer or director of any company that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

**VII.**

Enter a Final Judgment barring Smith from directly or indirectly participating in the issuance, purchase, offer, or sale of any security, provided that such injunction shall not prevent Smith from purchasing or selling securities listed on a national exchange for his own personal accounts;

**VIII.**

Grant such other and further relief as this Court deems just and proper; and

**IX.**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## JURY DEMAND

The Commission hereby demands a jury trial on any and all issues in this action so triable.

DATED: December 9, 2024

Respectfully submitted,

*/s/ Michael C. Moran*

Michael C. Moran
Senior Trial Counsel
S.D. Fla. Special Bar No. A5503288
Direct Dial: (617) 573-8931
Email: MoranMi@sec.gov

Kathleen B. Shields
Senior Trial Counsel
S.D. Fla. Special Bar No. A5503290
Direct Dial: (617) 573-8904
Email: ShieldsKa@sec.gov

William J. Durkin
Counsel
S.D. Fla. Special Bar No. A5503289
Direct Dial: (617) 573-8937
Email: DurkinW@sec.gov

**ATTORNEYS FOR PLAINTIFF**
**SECURITIES AND EXCHANGE**
**COMMISSION**
Boston Regional Office
33 Arch St., 24th Floor
Boston, MA 02110
Telephone: (617) 573-8900
Fax: (617) 573-4590